# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 3901 | DATE | 5/7/2004 |
| CASE TITLE | Lampley v. Onyx Corp. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Petition for Attorney's Fees (doc. # 71)

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] . Enter Memorandum Opinion and Order. For the attached reasons, Plaintiff's are awarded attorney's fees in the amount of $ 171,187.83 and costs in the amount of $ 6,488.98.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 1 0 2004 date docketed | 94 |
| ✓ | Docketing to mail notices. | | JXM docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| JHC | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERALD P. LAMPLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 00 C 3901 |
| | ) | |
| | ) | The Honorable William J. Hibbler |
| ONYX ACCEPTANCE CORP., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DOCKETED MAY 10 2004

## MEMORANDUM OPINION AND ORDER

A jury returned a two-count verdict in favor of the Plaintiff after a six-day jury trial in this Title VII discrimination and retaliation case. Before the Court is Plaintiff's motion for attorney's fees. Plaintiff requests $ 250,414.25 in attorney's fees for their work related to the trial, $ 6,488.98 in costs related to the trial, and $4,245 in fees incurred preparing the petition for attorney's fees and the reply to Defendant's opposition to that petition, for a total of $ 261,148.23 in fees and costs. Title VII provides that the court may allow the prevailing party reasonable attorney's fees as part of costs. 42 U.S.C. § 2000e-5(k). Here, Plaintiff was undoubtedly a prevailing party, having obtained a judgment of $301,000 on the two counts.[1] The most useful starting point for determining reasonable fees is to calculate the lodestar by multiplying the number of hours

---

[1] Moreover, the jury returned a verdict of $345,000 on Count II (Retaliation), which the Court reduced by $45,000 because of the $300,000 cap on damages imposed by 42 U.S.C. § 1981a(b)(3).

1



reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). The lodestar may be adjusted upward or downward, but neither Plaintiff nor Defendant makes such an argument.

To say the least, this case was litigious. Counsels' pugnaciousness has now spilled over into the squabble over attorney's fees.[2] On the one hand is the Plaintiff's attorneys, who claim $261,148 in fees. On the other is the Defendant's attorney, who claims that 1) Plaintiff's fee petition is untimely; 2) Plaintiff's counsel have charged excessive hourly fees for their work; and 3) Plaintiff's counsel have overrepresented the number of hours spent on the case.

*A. Timeliness*

Defendant's first ground is without merit. Defendant filed a motion to dismiss Plaintiff's fee petition when it was first filed. The Court heard argument on that motion on October 22, 2002, and denied the Defendant's motion and granted the Plaintiff's motion to file the fee petition instanter (which unfortunately caused the Court's tracking system to show that the fee petition itself had been ruled upon, thus causing the delay in ruling on the merits of the petition). Defendant does not ask the Court to revisit that ruling, and its objection on the ground of untimeliness is without merit.

*B. Reasonable Hourly Rate*

A reasonable hourly rate is one "derived from the market rate for the services rendered." *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir.2003). Furthermore, an attorney's actual billing rate

---

[2] It should be made clear that William J. Harte and Joseph E. Tighe did not appear until this case was on appeal, and throughout this order any references to Defendant's counsel are to Robert Cybak, who represented Defendant during pre-trial proceedings and at trial.

for similar litigation is a "presumptively appropriate" surrogate for the market rate. *Id.* at 930. Plaintiff has submitted records detailing its customary rate and also affidavits from other attorneys practicing in the field of employment discrimination averring that the rate charged by Plaintiff's attorneys is reasonable. Once the prevailing party has shouldered the burden of establishing its market rate, it is up to the opposing side to show "a good reason why a lower rate is essential." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir.1993). Defendant submits no evidence (affidavits from other attorneys practicing in the field, for example) to suggest that the records and affidavits submitted by the Plaintiff do not represent the market rate. Nor does Defendant point the Court to any cases where comparable hourly rates were rejected as unreasonable. Defendant instead attacks the qualifications of Plaintiff's counsel themselves, a curious tactic to say the least, since it was the Plaintiff's counsel who emerged from the fracas victorious. Some of Defendant's attacks, however, are more than simply curious, they are uncalled for —at one point in its brief, Defendant suggests that the only reason Plaintiff's counsel has any experience is because he frequently has been sued. Despite Defendant's unsupported claim to the contrary, the Court found several instances in which hourly rates in excess of or comparable to those charged by Plaintiff's counsel were found to be reasonable. *See, e.g., Connolly v. National Sch. Bus Serv., Inc.*, 177 F.3d 593 (7th Cir. 1999) (rates of $285 for lead attorney and $175 for associate reasonable in Title VII case); *Flaherty v. Marchand*, 284 F.Supp.2d 1056 (N.D. Ill. 2003) (rate of $450 found to be reasonable); *Dormeyer v. Comerica Bank-Illinois*, No. 96 C 4805, 1999 WL 608771, *5 (N.D.Ill. Aug. 6 1999) (reporting hourly rate of $320 for lead attorney and $220 for second attorney in Title VII case). The Court finds the rates charged by Plaintiff's counsel ($350 for Michael L. Maduff, $250 for Aaron B. Maduff, and $175 for associate Deanna Medina) to be reasonable.

3

## C. *Hours Reasonably Expended*

Plaintiff's counsel represent that they spent 1056 hours of time (including both attorneys and clerks) on the case. According to the Defendant, this amount egregiously overrepresents the amount of hours that actually were spent on the case. Defendant alleges that Plaintiff's counsel engaged in double billing, block billing, made unreasonable charges, overstated charges for tasks, and billed for events that did not occur.

First, the Court observes that Defendant's claims are met with some skepticism because of counsel's refusal to participate in the process outlined in Local Rule 54.3. Plaintiff's counsel served Defendant's counsel with the bill for fees and a cover letter requesting a meeting regarding any disagreements on August 12, 2002. Plaintiff's counsel sent a second letter requesting a meeting on August 26, 2002. And on October 11, 2002, Plaintiff's counsel sent a third letter requesting a meeting regarding fees and requesting Defendant's counsel to identify specific objections to the fees so that a joint statement could be prepared. Defendant's counsel responded only with hand-written, one-paragraph notes expressing a general intent to challenge the fee petition, requests for records, and unkept promises to call to arrange meetings. Defendant's counsel wrote in the Memorandum in Support of Objections to Motion for Instructions that "the parties continue to experience difficulty in working together in the manner contemplated by the rules to present the fee motion." An understatement. Defendant's counsel's stubborn refusal to meet with Plaintiff's counsel to discuss reasonable fees undermines his credibility and places the burden of sorting through yet another messy, and certainly uncivil, dispute on the Court. Moreover, Defendant's counsel makes claims in his response to the fee petition that are just plain wrong. For example, Defendant claims that "plaintiff 'overpled' his case with unnecessary counts,

4

characterized the case as involving racial animus in ONYX's Rosemont Office, when the case was actually a one-count retaliation case." But *actually* the jury returned a *two-count* verdict against the Defendant. The jury found that the Defendant *did* discriminate against the Plaintiff because of his race. Defense counsel's misrepresentation of the nature of the case only further undermines his credibility. Defense counsel also suggests in his response to the fee petition, that Plaintiff "filed unnecessary motions to compel and for sanctions, when simple phone calls would have resulted in the production of the requested information." This statement is ludicrous. The Court is fully cognizant of the obstinance with which Defendant litigated the case. Indeed, the Court *granted* Plaintiff's motion for sanctions when Defendant had failed to comply with discovery requests. (See Order 6/14/2001, Doc. #20). Despite Defendant's refusal to participate in the Local Rule 54.3 process, the Court provided the Defendant the opportunity to respond to Plaintiff's fee petition with its specific objections. That Defendant chose to accept this opportunity by attacking the character of Plaintiff's attorneys and to distort the history of the case is disappointing to say the least.

Nevertheless, Defendant does submit a chart purporting to outline objections to the Plaintiff's fees. But the chart contains nothing but a description of Plaintiff's counsels' activities, the amount charged, and the date billed. For example, Defendant objects to a strategy meeting on April 18, 2002 (four days before the trial began) for which the Plaintiff's billed $1380. Defendant does not detail the specific objection to this charge, however. Defendant also submits a 63-page long, handwritten document purporting to detail specific objections to the Plaintiff's fees. Many of Defendant's comments are illegible. Others contain no explication of the objection raised. Despite the paucity of Defendant's objections, prevailing parties seeking to recover

attorneys' fees bear the burden of substantiating the hours worked and the rate claimed. *Hensley*, 461 U.S. at 433. While attorneys are "not required to record in great detail how each minute of his time was expended ... counsel should identify the general subject matter of his time expenditures." *Id.* at 436-37 n. 12. In this case even a cursory review of Plaintiff's fees suggests that the 1,056 hours claimed by Plaintiff are excessive. A few examples: (1) on June 8, 2001, Plaintiff claims to have spent 5 hours in preparing a *Third* Motion to Compel, but said motion was apparently not filed because on June 11, 2001 (the first docket date following June 8, 2001) a *Fourth* Motion to Compel was filed, not a third motion to compel; (2) on June 11, 2001, a "final revision" of the Fourth Motion to Compel allegedly took 2.3 hours, "compiling and attaching exhibits" also took 2.3 hours, filing the motion took .8 hours, preparation of a fax regarding the Fourth Motion to Compel took .4 hours; all told 5.8 hours were spent *after* the Fourth Motion to Compel had already been drafted; (3) on May 16, 2001, .8 hours were spent "conferencing" regarding opposing counsel's "tyrade [sic]" and the "effect on a *new client* sitting in waiting area"; (4) on May 8, 2001, three attorneys met for 2.5 hours, for 7.5 hours total billed time, to discuss a potential Motion to Compel, which had taken only 1.7 hours to prepare; (5) between May 19, 2001 and June 13, 2001, 28.8 hours were spent reviewing and revising (not drafting) Plaintiff's Request to Admit; (6) on August 24, 2001, 12 hours were spent conducting a damage calculation for a Settlement Status, after 5.8 hours were spent on the same the day before; (7) on September 21, 2001, an hour was spent discussing a minute order in which a settlement conference had been rescheduled, after .5 hours were spent the day before regarding the scheduling of the conference; (8) at least 106.7 hours were spent preparing the pretrial order and proposed jury instructions, not including time spent filing motions to strike Defendant's motions in limine; (9) 30.5 hours were

spent "preparing" for a pretrial conference that lasted less than three hours; (10) 5.7 hours were spent *reviewing* (again, not drafting) closing arguments and 4.2 hours were spent rehearsing said arguments; (11) on April 29, 2002, in a typical trial-day entry, two attorneys for Plaintiff allegedly spent 10.8 hours, each, attending the trial, without any explanation of how long the Court was in session or what tasks the attorneys performed during the trial.

The Court finds that counsel's claims that in excess of 1,056 hours were expended preparing for a six-day, employment discrimination trial, for which no summary judgment motion was filed, are excessive. *See Kao v. Sara Lee Corp.*, No. 92 C 7311, 1997 WL 359967, *4 (N.D. Ill. June 13, 1997) (600 hours spent on one-count employment discrimination case that culminated in five-day bench trial deemed excessive). Throughout its request for fees, Counsel has attempted to charge Defendant for time that simply is not recoverable: Counsel has attempted to bill a conference an alleged "tyrade [sic]" by Defense counsel because of the effect it might have had on *prospective* clients, time spent on a motion to compel that was never filed, and an hour long discussion of a minute order informing counsel that a settlement conference had been rescheduled. Further, throughout the petition, Counsel's representation of the time spent in preparation borders on the extraordinary. The Court cannot justify nearly six hours to review a motion to compel that had already been prepared or in excess of seven hours to *discuss* a motion to compel that had already been prepared or nearly six hours to review closing arguments. In addition, the Court does not recall trial-day that lasted nearly 11 hours. Throughout the petition, Counsel routinely bills time for multiple attorneys without providing any explanation of why more than one attorney was needed to perform a specific task.

7

When "a fee petition is vague or inadequately documented," the Court "may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir.2000). As noted earlier, this case was litigious. Neither attorney was a model of civility or decorum, and both counsel routinely appeared to take positions merely to vex their opponents. The Court is convinced that, just as Defendant's counsel stubbornly refused to participate in the process outlined in Local Rule 54.3, Plaintiff's counsel has used an extravagant fee petition as a vehicle to needle Defense counsel one last time. The Court hopes that in the future that both counsel involved in this litigation can demonstrate more civility towards their opponents and avoid the hostile bickering that permeated this case from start to finish. For the reasons noted above, the Court finds that Plaintiff's fee petition is vague and inadequately documented and therefore reduces the Plaintiff's request for fees by 1/3 to the amount of $166, 942.83.

The Court finds Plaintiff's request for costs in the amount of $6,488.98 to be reasonable and Plaintiff's request for fees in relation to preparing the petition in the amount of $4,245.00 to be reasonable, bringing the total award of fees and costs to $177,676.81.

IT IS SO ORDERED.

5/7/04
Dated

The Honorable William J. Hibbler
United States District Court